No. 96-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


JOE YARBOROUGH,

Petitioner and Appellant,

vs.

MONTANA MUNICIPAL INSURANCE
AUTHORITY (MMIA),

Respondent and Insurer for

CITY OF BILLINGS,

Employer and Respondents.



APPEAL FROM:   Workersþ Compensation Court
For the State of Montana
The Honorable Michael McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick R. Sheehy, Halverson, Sheehy & Plath, Billings, Montana

For Respondent:

Oliver H. Goe, Browning, Kaleczyc, Berry & Hoven, Helena, Montana



Submitted on Briefs: May 8, 1997

Decided:  May 20, 1997
Filed:


_____
Clerk


Justice James C. Nelson delivered the Opinion of the Court.


On June 28, 1996, the Workers' Compensation Court entered findings of fact, conclusions of law and judgment denying Petitioner/Appellant Joe Yarborough (Yarborough) compensation and medical benefits for an alleged work-related injury as well as attorney fees, costs and a penalty.  Yarborough appeals only that portion of the

judgment denying him compensation and medical benefits for his alleged work-related injury. We affirm.

We restate the issues raised on appeal as follows:

1. Did the Workers' Compensation Court err in determining that Yarborough did not suffer a compensable injury when he developed post-traumatic stress disorder?

2. Did the Workers' Compensation Court err in determining that Yarborough did not suffer any permanent physical restriction from the October 22, 1987 injury?

3. Did the Workers' Compensation Court err in determining that Yarborough's wages during 1987 were $1,780 per month or $21,360 annually?

4. Did the Workers' Compensation Court err in failing to award wage supplement benefits for the period 1988 to 1995?

## FACTUAL AND PROCEDURAL BACKGROUND

Yarborough worked as a firefighter for the City of Billings in Yellowstone County, Montana, from 1983 until 1987. On October 22, 1987, Yarborough responded to a fire at a residential home in Billings, Montana. Upon approaching the burning home, a "fireball" exploded from the home, striking and injuring Yarborough and one other firefighter. Yarborough was taken to the emergency room in Saint Vincent Hospital and treated for first and second degree burns on his face and hands. He did not return to work for two and one-half weeks. Thereafter, Yarborough resumed his normal duties without restriction until he resigned. His last day of work was December 24, 1987.

Prior to the October 22, 1987 accident (the accident), Yarborough had been treated for depression, substance abuse, family problems and work problems beginning in 1983. After the accident, Yarborough's psychiatrist diagnosed him as suffering from post-traumatic stress disorder (PTSD) as a result of the accident.

On May 24, 1995, Yarborough filed a Petition for Hearing with the Workers' Compensation Court seeking an award of temporary total disability benefits, permanent partial disability benefits and medical benefits for the injuries he sustained on October 22, 1987. After the Montana Municipal Insurance Authority (MMIA), Respondent and Insurer for the City of Billings, filed a motion for summary judgment, Yarborough abandoned all claims to temporary total disability benefits. On May 7, 1996, the Workers' Compensation Court held trial on Yarborough's claim to permanent partial disability benefits, specifically wage supplement benefits.

On June 28, 1996, the Workers' Compensation Court entered its findings of fact, conclusions of law and judgment denying Yarborough any compensation or medical benefits. The Workers' Compensation Court held that Yarborough's PTSD arose from "emotional or mental stress," and, therefore, was excluded from the definition of injury as set forth under 39-71-119, MCA (1987). Accordingly, the Workers' Compensation Court held that Yarborough's condition was not compensable under the Montana Workers' Compensation Act (the Act). From this judgment, Yarborough appeals. We affirm.

## DISCUSSION

With regard to Issue 1, we hold that the Workers' Compensation Court correctly determined that Yarborough's PTSD is not a compensable injury under 39-71-119, MCA (1987). Consequently, we affirm the Workers' Compensation Court's judgment denying Yarborough compensation and medical benefits. Accordingly, because Issue 1 is dispositive, we will not address the remaining three issues raised on appeal.

Did the Workers' Compensation Court err in determining that Yarborough did not suffer a compensable injury when he developed post-traumatic stress disorder?

In Conclusion of Law No. 3, the Workers' Compensation Court stated in pertinent part:

The claimant in this case was fully credible. Nonetheless, I conclude that as a matter of law claimant's psychological condition is not a compensable injury within the meaning of the Montana Workers' Compensation Act.

. . ..

In this case, . . . there is no evidence indicating that claimant's PTSD was caused by injuries he suffered on . . . October 22, 1987. The injuries were resolved in a short time and were inconsequential. Rather, the evidence demonstrates that it was the mental shock or mental fright that gave rise to claimant's disability. Thus, his mental condition is one "arising from . . . emotional or mental stress" and is excluded from the injury definition [under   39-71-119, MCA (1987)]. Since claimant's PTSD and resulting disability were not a consequence of his physical injuries, they are not compensable under the Workers' Compensation Act.

We review the Workers' Compensation Court's conclusions of law to determine whether those conclusions are correct. Wunderlich v. Lumbermens Mut. Cas. Co. (1995), 270 Mont. 404, 410, 892 P.2d 563, 567.

The relevant portion of   39-71-119, MCA (1987), provides:

(1)  "Injury" or "injured" means:

(a)  internal or external physical harm to the body;

. . ..

(2)  An injury is caused by an accident. An accident is:

(a)  an unexpected traumatic incident or unusual strain;

(b)  identifiable by time and place of occurrence;

(c)  identifiable by member or part of the body affected; and

(d)  caused by a specific event on a single day or during a single work shift.

(3)  "Injury" or "injured" does not mean a physical or mental condition arising from:

(a)  emotional or mental stress; or

(b)  a nonphysical stimulus or activity.

Yarborough argues that the Workers' Compensation Court's conclusion of law is in error. He asserts that   39-71-119, MCA (1987), requires a claimant to prove three things:  (1) the claimant has an injury; (2) the claimant's injury was caused by an accident; and (3) if a mental condition is associated with that injury, that mental condition cannot arise from  "emotional or mental stress" or "a nonphysical stimulus or activity."

Yarborough contends that he proved all three elements. Specifically, Yarborough contends that unlike the injuries at issue in both Stratemeyer v. Lincoln County (1993), 259 Mont. 147, 855 P.2d 506 (Stratemeyer I); and Kleinhesselink v. Chevron, U.S.A. (1996), 277 Mont. 158, 920 P.2d 108, his PTSD did not arise from emotional or mental stress, but rather arose from a physical stimulus--burns he received from the house-fire accident. See Stratemeyer I, 855 P.2d 506 (holding that   39-71-119(3), MCA (1987), which precluded Stratemeyer from recovering under the Act for his mental injuries arising from emotional or mental stress, was constitutional). Alternatively, Yarborough contends that   39-71-119(3), MCA (1987), does not require that a mental condition result from physical harm to the body, but rather only requires a physical stimulus or activity such as the house-fire explosion. Therefore, Yarborough argues that he suffered a compensable injury as defined in   39-71-119, MCA (1987).

MMIA responds that the Workers' Compensation Court's conclusion of law is correct. While MMIA does not dispute that Yarborough suffered physical injuries on October 22, 1987, MMIA also asserts that his physical injuries healed quickly, left no permanent disability, and Yarborough returned to work after a short period of time. Agreeing with the Workers' Compensation Court, MMIA argues that Yarborough's PTSD resulted not from his physical injuries which were resolved within several weeks of the accident, but from the emotional and mental stress of the accident combined with his pre-existing psychological distress. Therefore, MMIA argues that the Workers' Compensation Court correctly held that Yarborough's PTSD is not a compensable injury under   39-71-119, MCA (1987).

This first issue on appeal centers on the Workers' Compensation Court's interpretation of  39-71-119(3), MCA (1987), as it applies to Yarborough's PTSD.  We must determine whether the Workers' Compensation Court correctly concluded that Yarborough's mental condition arose from "emotional or mental stress."  In Stratemeyer v. Lincoln County (1996), 276 Mont. 67, 915 P.2d 175 (Stratemeyer II), Stratemeyer, a deputy sheriff, sued his employer in tort for mental injuries he allegedly suffered after responding to a suicide call and witnessing the aftermath.  On appeal, we addressed the issue of whether Stratemeyer could bring a tort action against his employer for mental injuries which were excluded from the Act.  Stratemeyer II, 915 P.2d at 179-82 (second appeal arising from mental injuries he suffered while working as deputy sheriff).  See Stratemeyer I, 855 P.2d 506.  We held that because Stratemeyer's mental injury was by definition excluded from coverage under the  Act pursuant to  39-71-119, MCA, his mental injury was also excluded from the exclusive remedy provision of  39-71-411, MCA, and, therefore, he could sue his employer in tort.  Stratemeyer II, 915 P.2d at 179-82.

Our conclusion that Stratemeyer's mental injury did not satisfy the definition of compensable injury pursuant to  39-71-119, MCA, was based upon our classification of Stratemeyer's emotional distress as "mental-mental" (mental stimulus, mental consequence). Stratemeyer II, 915 P.2d at 182.  As defined under  39-71-119(3), MCA, þ þ[i]njuryþ or þinjuredþ does not mean a physical or mental condition arising from: (a) emotional or mental stress; or (b) a nonphysical stimulus or activity."  Consequently, because Stratemeyer's mental condition arose from emotional or mental stress, his injury was excluded from coverage by the Act.  Sections 39-71-119(3) and 39-71-411, MCA.

Following the rationale set forth in Stratemeyer II, we held in Kleinhesselink that Kleinhesselink also was precluded from recovery under the Act, and, therefore, he could proceed with his tort action against his employer.  Kleinhesselink, 920 P.2d at 111.

Kleinhesselink worked as a safety coordinator at a mining company.  An accident occurred when Kleinhesselink's safety instructions were ignored, resulting in the death and injury of mine workers.  Due to this accident, Kleinhesselink requested workers' compensation benefits, alleging that he suffered from a variety of symptoms including guilt, depression, chronic fatigue, insomnia, nausea, headaches, muscle spasms and digestive problems.  His request was denied.  Kleinhesselink, 920 P.2d at 109-10.

On appeal, we compared Kleinhesselink's injuries to those Stratemeyer suffered.  In addition to allegedly suffering "mental-mental" injuries, as did Stratemeyer, Kleinhesselink also allegedly suffered from "mental-physical" injuries.  Kleinhesselink, 920 P.2d at 111. That is, Kleinhesselink alleged that he suffered mental, emotional and physical injuries which arose from the emotional or mental stress caused by the mining accident deaths and injuries.  Kleinhesselink, 920 P.2d at 111.  While Kleinhesselink's injuries were both physical and mental, we noted that  39-71-119(3)(a), MCA, excluded from the Act both physical and mental conditions arising from emotional or mental stress, i.e."mental-physical" injuries and "mental-mental" injuries are excluded.  Kleinhesselink, 920 P.2d at 111.  Consequently, because Kleinhesselink's physical and mental conditions arose from emotional and mental stress, he could not recover under the Act for his alleged injuries, and, therefore, could proceed with his tort action against his employer.  Kleinhesselink, 920 P.2d at 111.

Just as in Stratemeyer II and Kleinhesselink, Yarborough allegedly suffers from a mental condition of PTSD.  However, Yarborough argues that, unlike Stratemeyer and Kleinhesselink, his mental injuries resulted from a physical stimulus.  While we agree with Yarborough's suggested analytical approach concerning the requirements of  39-71-119, MCA (1987), we disagree with Yarborough's argument that his mental injuries resulted from a physical stimulus as required by  39-71-119(3), MCA (1987).  First, we find unpersuasive Yarborough's alternative argument that the house-fire explosion itself constituted the required physical stimulus.  Furthermore, based on the evidence presented, we also disagree with Yarborough's argument that the burns to his hands and face constituted a physical stimulus which caused his mental injury of PTSD.  Rather, based upon the plain language of  39-71-119, MCA (1987) and the evidence presented, we agree with the Workers' Compensation Court that Yarborough's

PTSD arose from emotional or mental stress, and, therefore, is not a compensable injury. First, Yarborough did suffer first and second degree burns to his hands and face, and, therefore, experienced an "injury" as defined by 39-71-119(1)(a), MCA (1987). Second, he received these burns in the house-fire explosion on October 22, 1987, and, therefore, his injury was caused by an "accident" as defined by 39-71-119(2), MCA (1987). However, Yarborough's subsequent mental condition of PTSD did not arise from a physical stimulus, i.e. the burns to his hands and face, as required by 39-71-119(3), MCA (1987). The Workers' Compensation Court explained that no evidence indicated that Yarborough's injuries from the accident caused his PTSD, but, "[r]ather, the evidence demonstrates that it was the mental shock or mental fright that gave rise to [Yarborough's] disability." Thus, the Workers' Compensation Court concluded that Yarborough's PTSD arose from emotional or mental stress, and, therefore, his mental condition was excluded from the injury definition under 39-71-119(3), MCA (1987). Consequently, the Workers' Compensation Court ruled that Yarborough's PTSD was not a compensable injury under the Act.

Upon review of the expert medical testimony, we agree with the Workers' Compensation Court that no evidence indicates that Yarborough's PTSD was caused by the physical injuries he suffered from the accident on October 22, 1987. In fact, both medical experts linked Yarborough's PTSD with the accident itself and not with Yarborough's physical injuries--i.e. the first and second degree burns which where treated and quickly healed without incident. In his opinion letter dated January 8, 1996, Yarborough's psychiatrist, Thomas W. Van Dyk, M.D., stated the following:

In my opinion the traumatic events of the fire on October 22, 1987 aggravated and exacerbated [Yarborough's] previous mental condition and added a new feature to his psychiatric diagnosis, that being Post Traumatic Stress Disorder. Because of this Post Traumatic Stress Disorder he was no longer able to continue his employment as a fire fighter because he experience [sic] increased anxiety and revulsion and fear in dealing with fire situations. . . .. I feel that Mr. Yarborough should be permanently restricted from working as a fire fighter because of the traumatic events of October 22, 1987, the consequent Post Traumatic Stress Disorder and exacerbation of his other mental conditions.

Additionally, after testifying on May 7, 1996, that he determined the explosion of October 22, 1987 to be the cause of Yarborough's PTSD, Dr. Van Dyk explained why he stated in his opinion letter of January 8, 1996, that Yarborough should be permanently restricted from working as a fire fighter:

I feel that if he were to return to fire fighting and be exposed to another explosion or dangerous fire situation where -- or these ambulance events, there is the possibility of his anxiety getting worse, these post-traumatic symptoms getting worse and him not functioning as a fire fighting or ambulance person, being a [sic] dangerous to others or being dangerous to himself by not being able to function, and becoming physically injured.

Similarly, on September 25, 1995, after conducting an independent psychological examination of Yarborough, Joseph K. McElhinny, Psy.D., included the following in his psychological evaluation:

Mr. Yarborough's inability to function as a fire fighter, by his report, after the work related accidents in 1987 is primarily a result of his pre-existing personality style and the non-work related psychosocial stressors he was experiencing at the time. . . .. The work related accidents no doubt exacerbated his psychologic problems and it is difficult to determine at this late date when the post-accident trauma actually was resolved. . . ..

I would estimate that at least 80% of Mr. Yarborough's psychiatric difficulties post-accident, were due to longstanding issues and 20% were exacerbation directly related to the accidents.

After reviewing the evidence in the record, we hold that the Workers'

Compensation Court correctly concluded that Yarborough's PTSD arose from emotional or mental stress, and, therefore, that Yarborough's PTSD was not a compensable injury as defined by 39-71-119, MCA (1987). Although Yarborough did suffer burns to his face and hands, no medical expert testified that Yarborough's PTSD directly resulted from those physical injuries. Rather, the medical testimony linked Yarborough's PTSD only to the house-fire explosion itself. Consequently, just as in Stratemeyer II and Kleinhesselink, Yarborough's PTSD resulted from emotional or mental stress, and, therefore is a "mental-mental" injury, excluded from the definition of injury as set forth under 39-71-119, MCA (1987). See Stratemeyer II, 915 P.2d at 182 and Kleinhesselink, 920 P.2d at 111. Accordingly, we affirm the Workers' Compensation Court's judgment denying Yarborough compensation and medical benefits.

Affirmed.

/S/  JAMES C. NELSON

We Concur:

/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART
/S/  TERRY N. TRIEWEILER
/S/  WILLIAM E. HUNT, SR.